**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **KNIGHTBROOK INSURANCE** | ) | **CASE NO:** |
| **COMPANY** | ) | |
| **4751 Wilshire Blvd., Suite 111** | ) | **JUDGE:** |
| **Los Angeles, California 90010,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **EGL EXPEDITED INC.** | ) | **COMPLAINT** |
| **225 W. North Ave., 2nd Floor** | ) | |
| **Villa Park, Illinois 60181,** | ) | |
| | ) | |
| **c/o statutory agent,** | ) | |
| **CSC- Lawyers Incorporating Service** | ) | |
| **50 W. Broad Street, Suite 1800** | ) | |
| **Columbus, Ohio 43215** | ) | |
| | ) | |
| **Defendants** | ) | |

Plaintiff KnightBrook Insurance Company ("KnightBrook") for its Complaint states as follows:

## PARTIES

1.    Plaintiff KnightBrook is an insurance company authorized to do business in the State of Ohio.

2.    Plaintiff KnightBrook is incorporated in the State of Delaware and has its principal place of business in Los Angeles, California.

3.    Defendant EGL Expedited Inc. ("EGL") is a motor carrier of property engaged in an interstate transportation authorized to do business in multiple states, including the State of Ohio.

4.   Defendant EGL is incorporated in the State of Texas and has its principal place of business in Houston, Texas.

## JURISDICTION AND VENUE

5.   There is a justiciable controversy between the parties.

6.   The matter in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00).

7.   Pursuant to 28 U.S.C.A. Section 1332, the Court has subject matter jurisdiction of the parties' justiciable controversy.

8.   Pursuant to 28 U.S.C.A. Section 1391, venue is proper in the Northern District of Ohio. The motor vehicle accident which gave rise to the damages paid and herein sought reimbursed occurred in the Northern District of Ohio near the intersection of U.S. Route 30 and Thayer Road in Monroe Township in Allen County, Ohio (the "Accident").

## THE POLICY AND MCS-90 ENDORSEMENT

9.   Plaintiff KnightBrook issued Defendant EGL a Transportation Program policy of insurance bearing number KBI000010-01 with a policy period May 29, 2019 to May 29, 2020 (the "Policy"). A true and accurate copy of the Policy is attached hereto and marked Exhibit A.

10. The Declarations and the Motor Carrier Coverage Form of the Policy provides, "Throughout this policy, the words 'you' and 'your' refer to the Named Insured shown in the Declarations [EGL]"; and, "The words 'we', 'us' and 'our' refer to the company providing this insurance [KnightBrook]."

11. The Declarations and the Motor Carrier Coverage Form of the Policy set forth, "Item Two of the Declarations shows the 'autos' that are covered 'autos' for each of your [EGL's] coverages"; and Item Two of the Declarations and the symbol entered next to the Policy's liability coverage on the Declarations (Symbol 67) designates the only "autos" that are covered

"autos" are "Specifically Described 'Autos'": "Only those 'autos' described in Item Three of the Declarations for which a premium charge is shown (and for Covered Autos Liability Coverage any 'trailers' you don't own while attached to any power unit described in Item Three)."

12. The Covered Autos Liability Coverage in the Motor Carrier Coverage Form of the Policy states:

> We [KnightBrook] will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".
>
> * * *
>
> We will have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. * * *
>
> **1.  Who Is An Insured**
>
> The following are "insureds":
>
> **a.**  You [EGL] for any covered "auto".

13. It is stated in the "**General Conditions**" subsection of the Motor Carrier Coverage Form of the Policy below "**Policy Period, Coverage Territory**", "Under this Coverage Form, we cover 'accidents' … occurring: **a.**  During the policy period shown in the Declarations [May 29, 2019 to May 29, 2020.]"

14. The Policy also contains a MCS-90 Form, the Endorsement for Motor Carrier Policies of Insurance for Public Liability under Sections 29 and 30 of the Motor Carrier Act of 1980 (the "MCS-90 Endorsement").

15. Defendant EGL is a motor carrier that receives payment to haul others' property across state lines and, therefore, must adhere to the rules and regulation of the Motor Carrier Act of 1980, 49 U.S.C. § 13906 (the "MCA").

16. MCA regulations mandate that all entities receiving payment to haul others' property across state lines or transporting hazardous substances have the MCS-90 Endorsement attached to any liability policy. See 49 C.F.R. § 387.15.  *Real Legacy Assur. Co. v. Santori Trucking, Inc.*, 560 F.Supp.2d 143, 144 (D. P.R. 2008).

17. The MCS-90 Endorsement provides that:

> The insurance policy to which this endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured, within the limits stated herein, as a motor carrier of property, with Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Motor Carrier Safety Administration (FMCSA).
>
> In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. Such insurance as is afforded, for public liability, does not apply to injury to or death of the insured's employees while engaged in the course of their employment, or property transported by the insured, designated as cargo. It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not

have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

## THE ACCIDENT

18. The Accident occurred during the policy period of the Policy. The Accident occurred on July 15, 2019 when a tractor-trailer owned and operated by Defendant EGL (the "EGL Tractor-Trailer") in the interstate transportation of property rear-ended a tractor-trailer owned and operated by Trust Transport, Inc. (the "Trust Tractor-Trailer") near the intersection of U.S. Route 30 and Thayer Road in Monroe Township in Allen County, Ohio (the "Accident").

19. The Trust Tractor-Trailer sustained property damage caused by the Accident and Defendant EGL's negligent operation of the EGL Tractor-Trailer.

20. Anvarbek Alaguzov, the driver of the Trust Tractor-Trailer sustained bodily injury proximately caused by the Accident and Defendant EGL's negligent operation of the EGL Tractor-Trailer.

21. Teodora Lazareivci, a passenger in the EGL Tractor-Trailer, also sustained bodily injury proximately caused by the Accident and Defendant EGL's negligent operation of the EGL Tractor-Trailer.

22. Neither Anvarbek Alaguzov nor Teodora Lazareivci was an employee of, or driver for Defendant EGL. Zeljko Popovic was the driver of the EGL Tractor-Trailer at the time of the Accident.

## RESULTING CLAIMS

23. Trust Transport, Inc. and its subrogated property insurer brought claims against Defendant EGL seeking damages that Defendant EGL was legally obligated to pay Trust Transport, Inc. and its subrogated property insurer because of the property damage to the Trust

Tractor-Trailer caused by the Accident and Defendant EGL's negligent operation of the EGL Tractor-Trailer (the "Trust Claims").

24. Anvarbek Alaguzov and his subrogated medical providers or insurers brought claims against Defendant EGL seeking damages Defendant EGL was legally obligated to pay Anvarbek Alaguzov and his subrogated medical providers or insurers for the bodily injury he sustained and resulting medical expenses he incurred caused by the Accident and Defendant EGL's negligent operation of the EGL Tractor-Trailer (the "Alaguzov Claims").

25. Teodora Lazareivci and her subrogated medical providers or insurers brought claims against Defendant EGL seeking damages Defendant EGL was legally obligated to pay Teodora Lazareivci and her subrogated medical providers or insurers for the bodily injury she sustained and resulting medical expenses she incurred caused by the Accident and Defendant EGL's negligent operation of the EGL Tractor-Trailer (the "Lazareivci Claims").

### DENIAL OF LIABILITY COVERAGE PURSUANT TO THE POLICY AND PAYMENT OF CLAIMS PURSUANT TO THE MCS-90 ENDORSMENT

26. At the time of the Accident, the EGL Tractor was not an "auto" described in Item Three of the Declarations of the Policy for which a premium charge was shown, and Zeljko Popovic was not a listed driver.

27. North American Risk Services, the third-party claims administrator for Plaintiff KnightBrook, wrote Defendant EGL on August 20, 2020 and notified Defendant EGL that the Trust Claims, the Alaguzov Claims and the Lazareivci Claims were made and that there was no coverage under the Policy for the Trust Claims, the Alaguzov Claims and the Lazareivci Claims. A true and accurate copy of the August 20, 2020 letter (the "Coverage Denial") issued on behalf of Plaintiff KnightBrook to Defendant EGL is attached hereto and marked Exhibit B.

28. The Coverage Denial stated that North American Risk Services' investigation has determined that the EGL Tractor-Trailer was not a Specifically Described Auto as required for coverage by the terms of the Policy and that Zeljko Popovic was not a listed driver on the Policy; and that there was no coverage for the Trust Claims, the Alaguzov Claims and the Lazareivci Claims because the EGL Tractor-Trailer was not specifically described on the Policy at the time of the Accident.

29. The Coverage Denial stated that the Policy however included the MCS-90 Endorsement.

30. The Coverage Denial set forth pertinent terms of the Policy and stated that Plaintiff KnightBrook would take steps to address the Trust Claims, the Alaguzov Claims and the Lazareivci Claims on Defendant EGL's behalf under the MCS-90 Endorsement of the Policy to bring about the best settlement of the Trust Claims, the Alaguzov Claims and the Lazareivci Claims and that any payments made prior to a judgment would be made to Defendant EGL's benefit and were not to be construed as a voluntary payment, but rather to affect the best settlement in Defendant EGL's interests without requiring the potential additional costs incurred for a judgment in a settlement that Defendant EGL would ultimately be held responsible to satisfy.

31. The Coverage Denial stated that Plaintiff KnightBrook would resolve the Trust Claims, the Alaguzov Claims and the Lazareivci Claims and that Plaintiff KnightBrook would seek reimbursement from Defendant EGL of the amounts which Plaintiff KnightBrook paid to resolve the Trust Claims, the Alaguzov Claims and the Lazareivci Claims.

32. The Coverage Denial instructed Defendant EGL that Plaintiff KnightBrook should be advised if there were any changes in the facts or circumstances of the Trust Claims, the

Alaguzov Claims and the Lazareivci Claims so Plaintiff KnightBrook might consider such information.

33. The Coverage Denial advised Defendant EGL that Plaintiff KnightBrook stood willing to review and consider any information, documentation, or analysis Defendant EGL wished to provide regarding the Accident and the Trust Claims, the Alaguzov Claims and the Lazareivci Claims.

34. The Coverage Denial instructed Defendant EGL to notify Plaintiff KnightBrook immediately if Defendant EGL believed the Coverage Denial was based on information or documentation that was in error; and stated that if so notified, Plaintiff KnightBrook would reconsider the Coverage Denial.

35. Defendant EGL did not advise Plaintiff KnightBrook that there were any changes in the facts or circumstances of the Trust Claims.

36. Defendant EGL did not provide in response to the Coverage Denial any information, documentation, or analysis regarding the Accident and the Trust Claims, the Alaguzov Claims and the Lazareivci Claims.

37. Defendant EGL did not notify Plaintiff KnightBrook that Defendant EGL believed the Coverage Denial was based on information or documentation that was in error.

38. Defendant EGL did not request that Plaintiff KnightBrook reconsider the Coverage Denial.

39. Pursuant to the MCS-90 Endorsement, a reasonable May 4, 2021 $35,795.62 payment was issued on behalf of Defendant EGL by or on behalf Plaintiff KnightBrook to obtain and full and final release of the Trust Claims.

40. Pursuant to the MCS-90 Endorsement, a reasonable September 25, 2020 $36,175.93 payment was issued on behalf of Defendant EGL by or on behalf Plaintiff KnightBrook to obtain and full and final release of the Alaguzov Claims.

41. Pursuant to the MCS-90 Endorsement, reasonable March 17, 2021 $63,428.92, March 19, 2021 $1,598.85, and March 25, 2021 $75,000.00 payments were issued on behalf of Defendant EGL by or own behalf Plaintiff KnightBrook to obtain and full and final release of the Lazareivci Claims.

## COUNT ONE
### (Breach of Contract/MCS-90 Endorsement)

42. Plaintiff KnightBrook reavers the allegations contained in all the prior paragraphs.

43. Plaintiff KnightBrook notified Defendant EGL that it made the payments totaling $209,999.32 to resolve the Trust Claims, the Alaguzov Claims and the Lazareivci Claims (the "Payments") and Plaintiff KnightBrook sought reimbursement from Defendant EGL of the Payments.

44. Defendant EGL has not reimbursed Plaintiff KnightBrook for any of the Payments made to resolve the Trust Claims, the Alaguzov Claims and the Lazareivci Claims.

45. Defendant EGL's failure to reimburse Plaintiff KnightBrook the Payments made to resolve the Trust Claims, the Alaguzov Claims and the Lazareivci Claims is a breach of the parties' agreement and the MCS-90 Endorsement.

WHEREFORE, Plaintiffs KnightBrook prays that the Court enter judgment against Defendant EGL for the total amount that Plaintiff KnightBrook reasonably paid to resolve the Trust Claims, the Alaguzov Claims, and the Lazareivci Claims and interests thereon.

## COUNT TWO
### (Declaratory Judgment Relief)

46. Plaintiff KnightBrook reavers the allegations contained in all the prior paragraphs.

47. At the time of the Accident, the EGL Tractor-Trailer was not a Specifically Described Auto as required for coverage by the terms of the Policy

48. The Policy does not provide liability coverage for the Trust Claims, the Alaguzov Claims and the Lazareivci Claims because the EGL Tractor-Trailer was not specifically described on the Policy at the time of the Accident, and Zeljko Popovic was not a listed driver on the Policy.

49. The Policy also contains a MCS-90 Endorsement that provides Plaintiff KnightBrook agrees to pay, within the limits of liability described herein, any final judgment recovered against Defendant EGL for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of the MCA regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere.

50. The MCS-90 Endorsement states that it is understood and agreed that no condition, provision, stipulation, or limitation contained in the Policy, the MCS-90 endorsement, or any other endorsement, or violation thereof, shall relieve the Plaintiff KnightBrook from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured.

51. The MCS-90 Endorsement states, however, all terms, conditions, and limitations in the Policy shall remain in full force and effect as binding between Plaintiff KnightBrook and Defendant EGL and that Defendant EGL agrees to reimburse Plaintiff KnightBrook for the

Payments made by Plaintiff KnightBrook on account of the Accident, the Trust Claims, the Alaguzov Claims and the Lazareivci Claims, or suit involving a breach of the terms of the Policy, and for the Payments that Plaintiff KnightBrook would not have been obligated to make under the provisions of the Policy except for the agreement contained in the MCS-90 Endorsement.

52. The MCS-90 Endorsement does not expand coverage to autos not covered under the Policy. Accord, *Harco Natl. Ins. Co. v. Bobac Trucking Inc*., 107 F.3d 733, 736 (9th Cir. 1997).

53. "The purpose of the MCS-90 is to protect the public, not to create a windfall to the insured." *Id*.

54. The MCS-90 Endorsement "ensures that a motor carrier has independent financial responsibility to pay for losses sustained by the general public arising out of its operations." *Real Legacy Assur. Co. v. Santori Trucking, Inc.*, 560 F.Supp.2d 143, 146 (D. P.R. 2008). "The endorsement is designed to protect the public, not the policyholder; the obligation the endorsement creates runs to the public, not to the insured. It seeks to ensure that ultimate responsibility lies with the insured trucking company." *Id*.

55. Defendant EGL has not reimbursed Plaintiff KnightBrook any of the Payments.

WHEREFORE, Plaintiffs KnightBrook prays that the Court declare the parties rights and obligations under the Policy, the MCA and the MCS-90 Endorsement: that the liability coverage of the Policy does not apply to the Trust Claims, the Alaguzov Claims, and Lazareivci Claims; that pursuant to the MCA and the MCS-90 Plaintiff KnightBrook nevertheless was legally obligated to pay the Trust Claims, the Alaguzov Claims, and the Lazareivci Claims; and that pursuant to the MCA and the MCS-90 Plaintiff KnightBrook is legally entitled to recover from

Defendant EGL the amounts Plaintiff KnightBrook reasonably paid to resolve the Trust Claims,

the Alaguzov Claims, and the Lazareivci Claims.

Respectfully submitted,

s/ Michael P. Ginty
**GARY L. NICHOLSON (0005268)**
**MICHAEL P. GINTY (0099757)**
GALLAGHER SHARP LLP
1215 Superior Avenue, 7th Floor
Cleveland, Ohio  44114
(216) 241-5310 (phone)
(216) 241-1608 (fax)
gnicholson@gallaghersharp.com
mginty@gallaghersharp.com

***Counsel for Plaintiff KnightBrook Insurance***
***Company***